Argued and submitted April 22, affirmed December 24, 1997

# James C. CURRAN
and Mary J. Curran,
husband and wife,
individually and as Trustees for the
James and Mary Curran Trust
Dated November 23, 1992,
*Appellants,*

*v.*

# STATE OF OREGON
by and through its
Department of Transportation,
*Respondent.*

(94-4550-E-3; CA A93098)

951 P2d 183

William A. Mansfield argued the cause and filed the briefs for appellants.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiffs brought an action against the Oregon Department of Transportation (ODOT) for inverse condemnation, based on a contention that ODOT had deprived them of all reasonable vehicular access from a state highway to a parcel of real property that abuts the highway. Plaintiffs appeal from a judgment that granted summary judgment in favor of ODOT in the action. In conducting our review of the summary judgment, we view the evidence and all reasonable inferences in the light most favorable to plaintiffs, the non-moving party. *See Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). ODOT, the moving party, has the burden of demonstrating that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See id.* at 415. We affirm.

Plaintiffs own land that abuts Oregon State Highway 62 (the Crater Lake Highway) and that lies between that highway and the Rogue River. From at least the mid-1930's until 1993, vehicles from the highway could drive onto plaintiffs' property using an approach road that was located at engineer centerline station 213+50. The entrance to that road was located on an outside curve of the highway. In June 1993, in order to comply with federal highway regulations, ODOT placed a guardrail along that curve, blocking the approach road.

To open another road from the property to the highway, plaintiffs had to apply for, and obtain, a permit from ODOT. *See* ORS 374.305(1). Initially, plaintiffs applied for a permit to reopen the original approach road. ODOT denied that request, suggesting to plaintiffs that they needed "to move the proposed access to the west property line before [ODOT] would look at it. This would be around [engineer center line station] 209+50 * * * to [station] 211+00." Plaintiffs had an engineer analyze the feasibility of putting an approach road at that location. He concluded that it would be "cost prohibitive" to build a new road at that location and

that, in all likelihood, plaintiffs would not be able to get permission to construct a road in that area because the road would cross a floodplain.[1]

Plaintiffs did not apply to ODOT for a permit to get access to the highway from that or any other location on the property. Instead, plaintiffs filed this inverse condemnation action against ODOT. Plaintiffs argued that they had a common-law right of access to their property from the highway and that, by blocking the old approach road, ODOT had eliminated all reasonable access to their property. They argued that that action constituted a taking of their property by ODOT for which ODOT was required to pay compensation under Article I, section 18, of the Oregon Constitution.[2] ODOT moved for summary judgment on plaintiff's claim. ODOT argued that, until plaintiffs had applied for and been denied a permit to build a new access road to their property, plaintiffs could not establish that ODOT had denied them all access to it from the highway. The trial court agreed with ODOT and entered summary judgment in its favor.

■ ■ Although property that abuts a highway enjoys a common-law right of access to the highway, that access right is "subject to the power of the proper legislative authority to control and regulate the use of the street as an open public highway." *Iron Works v. O. R. & N. Co.*, 26 Or 224, 228, 37 P 1016 (1894). Generally, any act by the state that affects the use of a highway for legitimate "highway" purposes does not result in a taking of access rights to the highway that is compensable under Article I, section 18, even if that action interferes with the abutting property owner's access to the highway from the property. *Barrett et al. v. Union Bridge Co.*, 117 Or 220, 224, 243 P 93 (1926). In this case, however, ODOT has conceded that if, in regulating a highway for highway

---

[1] The engineer made two designs for approach roads in the location suggested by the state, specifically at engineer center station 210+10. Alternative A, a right-angle approach, had an estimated cost of $82,500. Alternative B, a skewed-angle approach, had an estimated cost of $68,100. Each alternative crossed the floodplain.

[2] Article I, section 18, of the Oregon Constitution, provides, in part:

"Private property shall not be taken for public use * * * without just compensation."

purposes, the state eliminates *all* reasonable access from a highway to abutting property, then the state has taken property under Article I, section 18.[3] As a result, in conducting our review, we will assume that that is an accurate statement of the law and will determine whether, given that understanding of the law, the trial court erred in granting summary judgment in favor of ODOT.

■ ODOT argues that summary judgment is appropriate because plaintiffs' claim is unripe. Relying on *Nelson v.*

---

[3] Supreme Court cases have consistently held that, although a property owner has a common-law right of access to his or her property from an abutting public road, that right is subject to the right of the public to use the road for highway purposes. *See, e.g., McQuaid v. Portland & V. R'y Co.*, 18 Or 237, 22 P 899 (1889); *Iron Works v. O. R. & N. Co.*, 26 Or 224, 228, 37 P 1016 (1894); *Brand v. Multnomah County*, 38 Or 79, 60 P 390, 62 P 209 (1900); *Barrett et al. v. Union Bridge Co.*, 117 Or 220, 223-24, 243 P 93 (1926); *Sweet et al. v. Irrigation Canal Co.*, 198 Or 166, 191, 254 P2d 700, 256 P2d 252 (1953); *Oregon Investment Co. v. Schrunk*, 242 Or 63, 408 P2d 89 (1965). In each of those cases, the government interfered with the abutting property owner's access from his or her property to the street. In those cases where the interference was for a legitimate highway purpose, that is, to maintain the street as a street open to the public, the court held that the property owner did not have a taking claim. *See, e.g., Brand*, 38 Or at 92 (grade of road changed to connect two highways by a bridge; although the change blocked access from abutting property to the road, there was no taking because connecting two highways is a legitimate highway purpose); *Barrett*, 117 Or at 223-24 (same); *Oregon Investment Co.*, 242 Or at 69-70 (city maintained a 24-hour bus loading zone; although that blocked access from abutting property to the road, there was no taking because maintaining a safe bus loading zone is a legitimate highway purpose). In those cases where the interference was *not* intended to serve a legitimate highway purpose, the court held that the plaintiff did have a taking claim. *See, e.g., McQuaid*, 18 Or at 250 (grade of road changed so that a railroad could be built on a public road; that blocked access from abutting property to the road and constituted a taking because the action was primarily for a private railroad corporation's benefit); *Iron Works*, 26 Or at 228 (approach to bridge built on a public road; approach blocked access from abutting property to the road and constituted a taking because approach prevented the use of the street, as a street, by the public and the approach was built to serve private corporation); *Sweet*, 198 Or at 191 (irrigation ditch along road blocked access from abutting property to the road and constituted a taking because ditch belonged to a private corporation).

ODOT cites *State Dept. of Transportation v. Schoppert*, 82 Or App 311, 314, 728 P2d 80 (1986), and *Douglas County v. Briggs*, 34 Or App 409, 414, 578 P2d 1261 (1978), *aff'd on other grounds* 286 Or 151, 593 P2d 1115 (1979), for the proposition that if, in regulating a highway for highway purposes, the state eliminates *all* reasonable access from a highway to abutting property, then the state has taken property for which compensation is required under Article I, section 18. *Schoppert* did not actually address that issue, and the Supreme Court expressed "considerable doubt" about the correctness of our decision on that issue in *Briggs* in affirming our decision on other grounds. *Briggs*, 286 Or at 156-57. Hence, it is unclear whether ODOT's understanding of the issue is correct.

*City of Lake Oswego*, 126 Or App 416, 420, 869 P2d 350 (1994), plaintiffs argue that the ripeness doctrine does not apply to their claim.[4] In *Nelson*, the plaintiffs applied for a permit to build a house and, as a condition for approval of the permit, the city manager required the plaintiffs to convey a 55-foot drainage easement to the city. The plaintiffs complied with the condition but brought an action in circuit court in which they claimed that Article I, section 18, required the city to compensate them for the easement. The city argued that the plaintiffs' claim was not ripe because the plaintiffs had not appealed to the city council from the city manager's permit decision. We rejected the city's argument. We noted that the ripeness doctrine generally applies in regulatory takings, not in cases where a "development condition [results] in the actual acquisition of a private property interest by the government." *Id.* The reason that the ripeness doctrine generally does not apply when an actual property interest has been acquired is because, in those situations,

> "[t]here is nothing left to happen at the local or administrative level in order for the claim to be susceptible to adjudication; the only question is whether what *has* occurred *is* a taking[.] * * * The facts on both sides of the equation are readily susceptible to conventional judicial proof, and adjudication of the facts and of the applicable law is well within the judicial competence."

*Id.* at 422 (emphasis in original). Because, in that case, an appeal to the city council would not have clarified the scope of the condition and the only issue was whether what had occurred was a taking, we concluded that it would be inappropriate to apply the ripeness doctrine in that situation.

 Plaintiffs' reliance on *Nelson* is misplaced because, in this case, ODOT's action has not resulted in the acquisition of plaintiffs' private property. Instead, ODOT has regulated its

---

[4] Plaintiffs also argue that ODOT's ripeness argument is not preserved. That argument is without merit because, in arguing the motion for summary judgment, both parties addressed whether plaintiffs' claim was premature. In this context, that is essentially a ripeness argument and, although the argument is termed a "ripeness" argument on appeal, both parties make essentially the same arguments on appeal that they made in arguing the motion for summary judgment.

own property in a way that allegedly affects plaintiffs' property. Although plaintiffs' claim is not a traditional regulatory-taking claim, it is analogous to one. The issue in a regulatory-taking claim is "whether the owner is deprived of *all* substantial beneficial or economically viable use of the property." *Nelson,* 126 Or App at 422 (emphasis in original). The ripeness doctrine applies in that situation because "[w]ith rare exceptions, no *particular* denial of an application for a use can demonstrate the loss of *all* economic use." *Id.* (emphasis in original). The issue in this case is whether plaintiffs were deprived of *all* reasonable access to their property from the highway. The ripeness doctrine should apply in this situation because, with rare exceptions, no *particular* denial of access can demonstrate the loss of *all* access to the property from the highway. Unlike the situation in *Nelson,* here, a court cannot assess whether a taking has occurred until it is clear what access ODOT will permit. Therefore, we conclude that the ripeness doctrine should apply to this case.

■ In the takings context, the ripeness doctrine is concerned with

> "whether the owner has applied for enough uses or decisions so that the scope of what the local regulations permit or prohibit can be known."

*Id.* at 420. For ODOT to prevail on its motion for summary judgment, it had the burden of establishing that there were no genuine issues of material fact and that, as a matter of law, plaintiffs' claim was unripe. According to the undisputed facts, plaintiffs have land that abuts the Crater Lake Highway in more than one location. In 1993, ODOT blocked plaintiffs' access to their property from their original access road. To open another access road, plaintiffs had to get permission from ODOT. Other than for one to reopen the original road, plaintiffs did not apply for a permit to get access to the property at any point along the property. On that record, we conclude that ODOT is entitled to summary judgment because plaintiffs cannot prevail on a theory that ODOT denied them reasonable access to their property from the highway simply because ODOT denied them access at one point. Until plaintiffs apply for a permit for an alternative approach road, it is impossible to determine whether, by blocking the original

road, ODOT has deprived plaintiff of all reasonable access to their property from the highway.

■ Plaintiffs argue, however, that, under the futility exception to the ripeness doctrine, ODOT was nevertheless not entitled to judgment as a matter of law. They contend that the engineer's report that they submitted creates a question of fact about whether it would have been futile for them to apply for a permit for an alternative approach road. We disagree. To prevail on a futility argument, plaintiffs had to submit evidence that would support a finding that there were *no* other reasonable locations for an access road. *See, e.g., Larson v. Multnomah County*, 121 Or App 119, 123, 854 P2d 476 (in regulatory takings context, evidence that the plaintiffs applied for, and were denied, a zone change to use property did not satisfy futility requirement because it did not demonstrate that there were *no* other economically feasible projects that plaintiffs could apply to complete on the property), *adhered to on reconsideration* 123 Or App 300, 859 P2d 574 (1993). The engineer's report states that the location suggested by ODOT for an alternative approach road is not reasonable. The report does not assess, however, the feasibility of constructing a road at any other location on the property. It does not assert, nor can it be inferred to assert, that there is *no* location on the property where plaintiffs could reasonably be expected to construct a new approach road. Thus, while the report creates a question of fact about the feasibility of the location suggested by ODOT, it does not create a question of fact on the futility issue.

ODOT submitted evidence that established that plaintiffs' taking claim was not ripe for adjudication. Even if we assume that plaintiffs cannot use their original approach road and that the location suggested by the state is unreasonable, plaintiffs' claim is unripe because, on this record, a court cannot determine that ODOT would not allow access at some other location on the property. Plaintiffs have not applied for, or created a question of fact about whether it would be futile to apply for, an alternative approach road. Therefore, there are no genuine issues of material fact and ODOT was entitled to judgment as a matter of law.

Affirmed.